THE STATE, EX REL. SPENCER, *v.* MONTGOMERY COUNTY BOARD OF ELECTIONS ET AL.*

(No. 2399—Decided September 27, 1956.)

*Mr. Frederick C. O'Grady,* for relator.
*Mr. Mathias H. Heck,* prosecuting attorney, for respondents.

WISEMAN, J. This is an action originating in this court in which the relator prays that a writ of mandamus issue to re-

*Appeal dismissed, question moot, 166 Ohio St., 147.

spondents, as members of the Montgomery County Board of Elections, ordering them, as members of such board, "immediately to take such steps as may be necessary to enable them to provide in each polling place not less than one voting compartment, that is, one voting machine or one cubicle in which paper ballots may be marked for every 100 electors qualified to vote at such voting place, and for all other relief to which relator may be entitled in law or equity."

Respondents demurred to the petition "for the reason that there is a defect of parties-defendant," and "further for the reason that the petition does not state a cause of action cognizable at law."

In his petition, relator alleges he is a registered voter and a resident of Montgomery County, and that the respondents comprise the Board of Elections of Montgomery County, Ohio, and as such have the duty of administering the statutes relating to conducting and holding of elections in such county. After setting forth Sections 3501.29 and 3507.06, Revised Code, the relator alleges the following:

"The foregoing sections enjoin upon the respondents a clear duty to provide in every polling place not less than one voting compartment, that is, one voting machine or one cubicle in which paper ballots may be marked, for every 100 electors qualified to vote at such voting place. Notwithstanding such clear duty the respondents and their predecessors in office, for ten years last past, have failed to provide voting compartments in the required numbers generally throughout said county.

"Respondents and their predecessors in office, have taken the position that when voting machines are used the foregoing statutes do not require the furnishing of one voting machine for every 100 qualified electors upon the assumption that a voter can cast his vote on a voting machine more quickly than by paper ballot. That assumption is contrary to fact.

"Upon information and belief relator avers that, unless so ordered by this court, respondents will fail to provide in each polling place not less than one voting compartment, i. e., one voting machine or one cubicle in which paper ballots may be marked, for every 100 electors qualified to vote at such polling place.

"Because of the nature of their employment, approximately 50,000 registered voters in Montgomery County, Ohio, must vote between 4:30 p. m. and 6:30 p. m. By reason of the failure of the respondents to comply with the statutes above cited, many thousands of said registered voters have found it difficult, if not impossible, to exercise their right to vote at recent elections. Many thousands of said voters similarly will be disfranchised at the November 6, 1956, election if the respondents continue to disregard their clear legal duty in this respect.

"There are approximately 206,000 registered voters in Montgomery County. Respondents have available for use in the coming election 840 voting machines—a ratio of one voting machine for every 245 electors. Unless respondents are ordered by this court to provide one voting facility for every one hundred registered electors, there will be an inequality of voting facilities as between the voters of Montgomery County and those of counties using paper ballots. The board intends to use only voting machines in Montgomery county.

"Relator has no adequate remedy at law."

Respondents demur on the ground of defect of parties defendant. Respondents contend that the Secretary of State is a necessary party defendant, citing Section 3501.04, Revised Code, which provides that the Secretary of State is the chief election official of the state, with such powers and duties relating to registration of voters and the conduct of elections as are prescribed in Title XXXV of the Revised Code. The duties to be performed and the powers to be exercised in relation to the matter involved in this action are enjoined upon the board of elections of the county by the express provisions of the statute. Only necessary parties are required to be joined. In our opinion, the Secretary of State is not a necessary party, and this ground of the demurrer is overruled.

We consider the second and more important ground of the demurrer, to wit, that the petition does not state facts sufficient to constitute a cause of action. We are reminded that a writ of mandamus, being an extraordinary remedy, will not be granted unless a clear right to the writ be shown. The court will not issue a writ of mandamus against an official ordering him to perform an act except where the duty is clearly enjoined by law.

We consider the issue presented with this well-established legal principle in mind.

Is the board of elections required by law to provide in every polling place not less than one voting machine, or one voting compartment in which paper ballots may be marked, for each 100 qualified voters?

In resolving this question, we are required to consider and reconcile, if possible, the provisions of the three sections of the Revised Code. The pertinent part of Section 3501.29, Revised Code (126 Ohio Laws, 205, 211), provides:

"The board of elections shall provide for each precinct a polling place and provide adequate facilities at each polling place for conducting the election. The board shall provide a sufficient number of *screened or curtained voting compartments* to which electors may retire and conveniently mark their ballots, protected from the observation of others. The number of voting compartments shall *be not less than one for every one hundred electors* qualified to vote at such polling places. Each voting compartment shall be provided at all times with black lead pencils, instructions how to vote, and other necessary conveniences for marking the ballot. The presiding judge shall see that the voting compartments at all times are adequately lighted and contain the necessary supplies." (Emphasis ours.)

Section 3507.06, Revised Code, in part, provides:

"At all elections where voting machines may be used, the arrangement of the polling room shall be the same as is provided for by Sections 3501.29, 3501.30 and 3505.16 of the Revised Code, except as to voting shelves and ballot boxes which shall be omitted, unless it is necessary to use paper ballots."

Before we discuss the provisions of those sections, we briefly comment on certain matters raised in the brief of respondents. They dispute certain factual allegations set forth in the petition. On demurrer, all facts well pleaded in a petition are taken as true. The respondents are not permitted at this stage of the proceedings to dispute the facts stated. Respondents contend that relator's position is economically unsound, pointing out the great financial burden on the county if it were required to purchase additional voting machines. Whether the use of voting machines is more economical than the use of paper

ballots and the costs of additional machines are all irrelevant matters and have no place in this discussion.

The issue here presented is a question of law, which must be determined on the basis of the duty enjoined upon the board by the statutory law of this state.

We now discuss the controlling statutory provisions. Section 3501.29, Revised Code, requires the board of elections to provide in each polling place one screened or curtained voting compartment for every 100 electors qualified to vote at such polling place. This requirement is clearly expressed, and the duty to provide these compartments at every election and in every polling place is clearly enjoined. Section 3507.06, Revised Code, provides that where voting machines are used "the arrangement of the polling room shall be the same as is provided for by Sections 3501.29, 3501.30 and 3505.16 of the Revised Code."

We are concerned chiefly with the reference to Section 3501.29. Section 3501.30, Revised Code, provides that the board of elections shall provide all necessary supplies, enumerating them, for use in each polling place. Section 3505.16, Revised Code, provides for the care with which the package of supplies and ballot boxes shall be opened in the presence of precinct officials. Relator contends that the provision in Section 3507.06, Revised Code, referring to Section 3501.29, places a voting machine in the same category as voting compartments, and that, therefore, if voting machines are used, one voting machine must be furnished in each polling place for every 100 qualified electors. It is observed that the only change in the arrangement of the polling place is when machines are used, by the omission of "voting shelves and ballot boxes." There are no voting shelves or ballot boxes used in connection with voting on a machine, hence their omission. In every other respect the arrangement of the polling place is the same. The statute provides that a voting machine shall have attached a "screen, hood, or curtain, which will conceal the voter while voting. During the voting, it shall preclude every person from seeing or knowing the number of votes registered for any candidate or question and from tampering with any of the registration mechanism." See subsection (N) of Section 3507.05, Revised Code. When voting on

a machine the voter is in a "screened or curtained voting compartment" similar in general character to the "screened or curtained compartment" used by the voter when casting a paper ballot. The difference lies in the fact that the ballot in the one instance is cast by the use of a mechanical device, and in the other by the use of a paper ballot.

Sections 3501.29 and 3507.06, Revised Code, are *in pari materia* and must be construed together. When construing a statute the court is required to draw therefrom the intention of the Legislature. In ascertaining the intention of the Legislature it is helpful to consider the history of the statute under construction. Section 3501.29, in its present form, now mentions "screened or curtained voting compartments." These words were not always in this section. Prior to the amendment of Section 4785-117, General Code (122 Ohio Laws, 325, 345), now Section 3501.29, Revised Code, the section read, in part, as follows:

"The board shall provide a sufficient number of screened or curtained shelves at which electors may retire and conveniently mark their ballots, protected from the observations of others."

The term, "screened or curtained shelves," described a portion of the construction of the booths used in casting a paper ballot. After voting machines came into general use it was found that this description of the accommodations did not embrace voting machines. The use of a different term was necessary to encompass the use of voting machines. Consequently, in 1947, the 97th General Assembly amended Section 4585-117, General Code (122 Ohio Laws, 325, 345), to read in part as follows:

"The board shall provide a sufficient number of *screened or curtained voting compartments.*"

The use of the term, "voting compartments," was sufficient to encompass the use of both voting shelves and voting machines. We are at a loss to find any other purpose for the amendment. "Settled rules of statutory construction are applied in interpreting legislation relating to elections. Such statutes should be liberally construed, especially in favor of citizens whose right to vote they tend to restrict." 18 American Jurisprudence, 188, Section 11. It is reasonably clear that the Legis-

lature intended the term "voting compartments" as used in Section 3501.29, to include voting machines.

In construing Sections 3501.29 and 3507.06, Revised Code, we are required to observe the provisions of Section 3507.14, Revised Code, as all of these sections are *in pari materia* and must be construed together. Section 3507.14, in part, provides:

"The board of elections, in counties where voting machines are in use or are to be used, may combine, rearrange, and enlarge precincts; but it shall be the duty of the board to arrange for a sufficient number of voting machines to accommodate the number of electors in each precinct, according to the number of votes cast in such precinct at the next preceding election and taking into consideration the number of candidates and issues to be voted upon."

That section does not place discretion in the board to determine the number of machines to be used in each precinct, independently of the duties enjoined by Sections 3501.29 and 3507.06, Revised Code. The duty of the board under this section is in accord and not irreconcilable with the duties set forth in the other two sections mentioned. The board is required to determine the number of machines to be used in each precinct by applying the standard laid down in Section 3501.29 to wit, one voting machine for every 100 qualified electors, and on the basis of this ratio determine the number of machines necessary to accommodate the number of qualified electors in each precinct. It is also important to trace the history of this section and consider the legal effect of an amendment. The Act of the Legislature first authorizing the use of voting machines is found in 113 Ohio Laws, 307, 382 (Section 4785-161, General Code), effective January 1, 1930. Section 3507.14, Revised Code, was formerly Section 4785-161*k*, General Code (114 Ohio Laws, 679, 707), and as it was originally enacted provided in part as follows:

"The board of elections, in counties where voting machines are in use or are to be used, shall have power to combine, rearrange, and enlarge precincts; but no precinct shall have in excess of eight hundred voters, provided however that a board of elections may create precincts having a maximum of fourteen hundred electors in which case two voting machines shall be provided for such precinct."

In 1953, the section was amended, effective January 1, 1954, to read as above quoted. The amended act is found in 125 Ohio Laws, 713, 763, and this significant statement is found in the purpose of the Act: "to correct technical errors and inconsistencies in the election laws in order to provide for a more uniform operation of these laws throughout the state."

It will be observed that by the amendment of Section 3507. 14, Revised Code, the standard of one machine for each 800 voters, or two machines for each 1,400 voters, in each precinct was eliminated, and in its place these words are inserted: "It shall be the duty of the board to arrange for a sufficient number of voting machines to accommodate the number of electors in each precinct." A rule of statutory construction which is well established requires this court to give that construction which is reasonably clear and which will give effect to the provisions of all three sections. Where two constructions are possible, one where repugnancy or conflict is held to exist between two statutory provisions and the other where legal effect may be given to each and all provisions, the court must adopt the latter construction.

We conclude that there is no repugnancy or conflict between the provisions of Sections 3507.14 and 3501.29, and Section 3507.06, Revised Code, but, giving a liberal construction to the provisions of these sections, which we are required to do, legal effect may be given to each and every provision of all three sections. If any repugnancy existed between the sections, such repugnancy was removed by the amendment of Section 3507.14, Revised Code, effective January 1, 1954 (125 Ohio Laws, 713, 763).

Should we adopt the theory that wide discretion is reposed in the board under the provisions of Section 3507.14, Revised Code, to determine the number of voting machines to be used in each precinct, there would be an unlawful delegation of legislative power for the failure to lay down a standard. In that case the standard to be used would be determined by the board and would vary in different precincts in the same county and in different counties of the state. Certainly there would be no uniformity in its administration as contemplated by the Legislature and as stated in the purpose of the amending Act. The

number of machines to be used in each precinct and the standard to be followed would be left to the caprice and whims of the boards of the various counties. In a matter which is packed with political implications we do not believe that the Legislature intended this result. Furthermore, such construction would violate the rule that all laws of a general nature must have uniform operation throughout the state.

On the question of an unlawful delegation of legislative power, we quote briefly from Ohio Jurisprudence:

"It is an accepted doctrine in our constitutional law that the law-making prerogative is a sovereign power conferred by the people upon the legislative branch of the government and cannot be delegated to other officers, boards, or commissions, or branches of government. * * * The distinction between power granted to administer and power granted to legislate is the difference between a lawful and unlawful grant of power to administrative authorities." 1 Ohio Jurisprudence (2d), 426, 427, Section 26.

"While administration and legislation are quite distinct powers, the line which exactly separates their exercise is not easy to define in words, and there is no exact definition of the line which separates power to make laws from power to interpret and apply laws. Nevertheless, it is the duty of courts to find this line and to confine boards, commissions, and officers to the exercise of powers which are regulatory and administrative, and to interdict as to them functions which belong exclusively to legislative bodies." 1 Ohio Jurisprudence (2d), 427, 428, Section 27.

"It is the general rule that in order to avoid an unconstitutional delegation of power the Legislature itself must provide rules of conduct. It must declare the policy of the law and fix the legal principles which are to control in given cases, by setting up standards to guide the administrative agency in the exercise of its discretion." 1 Ohio Jurisprudence (2d), 430, 431, Section 28.

See, also, 10 Ohio Jurisprudence (2d), 385 *et seq.,* Section 308 *et seq.*

Where the subject matter is susceptible of standards to be laid down by the Legislature to govern the action of an adminis-

trative board, the Legislature must lay down such standards. It is only in a situation where the nature of the problem makes it impossible to lay down standards, that the Legislature may repose a wide discretion in an administrative board. 1 Ohio Jurisprudence (2d), 437, Section 30.

The Legislature has laid down the standard where paper ballots are used. It originally laid down the standard where voting machines were used, to wit, one for 800 voters, or two for 1,400 voters, but hard experience taught the Legislature and the citizens of this state that this standard was too high. Voters were turned away from the polls by the thousands. It is a matter of common knowledge, and it is alleged in the petition, that in the late afternoons after industrial plants release their employees a substantial number of the voters in many of the precincts attempt to exercise their right of franchise but find the facilities for voting entirely inadequate. This condition existed, as alleged in the petition, in precincts where voting machines are used, but where the machines furnished were wholly insufficient in number to permit all qualified electors to vote. This is an intolerable situation, and should be rectified. We believe the Legislature intended to correct this situation by the elimination of the standard of one machine for every 800 voters or two machines for every 1,400 voters and attempted by the amendment to remove any inconsistency or repugnancy between the statutory provisions and secure uniformity as stated in the preamble to the Act. As we have held, it is our opinion that the Legislature intended to apply the same standard respecting voting machines as it prescribed for paper ballots. To adopt the theory that the Legislature did not intend to prescribe a standard for the use of voting machines, but leave it to the discretion of the board, would require this court to find that there is an unlawful delegation of legislative power, and the sections permitting the use of voting machines would be unconstitutional and void.

The courts will sustain the constitutionality of a legislative act wherever possible. Moreover, the constitutionality of legislation is always presumed. We do not believe the Legislature, in amending Section 3507.14, Revised Code, intended to prescribe no standard in the use of voting machines, when it has

always prescribed a standard in the use of paper ballots. It is just as easy to set up a standard in the one case as in the other. Both situations are susceptible of standards to be set up by the Legislature.

Perhaps it is not too well appreciated, but much of the confusion and the imperative need for more voting machines in each precinct has arisen by reason of the adoption in Ohio of the Massachusetts ballot, where the voter must find the name of the candidate of his choice and pull a lever over the name of each candidate to be voted for. This requires a longer period of time to cast a ballot than when the Australian ballot, which permitted straight voting, was in use. A standard which was adequate under the Australian ballot has been found to be wholly inadequate under the Massachusetts ballot. The great expense to the county caused by the need for a larger number of voting machines, an expensive luxury to the voter, can be attributed largely to the change from the Australian to the Massachusetts ballot.

In recent years, prior to every election the citizens are urged to exercise their right of franchise as a civic duty. Many civic organizations and countless patriotic citizens expend time, effort and money in an effort to ''get out the vote.'' When such campaigns are successful in getting a high registration and persuading the qualified electors to vote on election day, every means should be employed by the election officials to see to it that adequate accommodations are provided to care for the ''peak load'' which comes in the last several hours before closing of the polls. Election officials should make every effort to assist the voters in the exercise of their franchise. We have attempted to reconcile the several statutory provisions and place that construction upon the statutes which would achieve the same worthy purpose. *Daggett* v. *Hudson*, 43 Ohio St., 548, 559, 561, 3 N. E., 538, 54 Am. Rep., 832.

The judgment of this court does not require the board to subject the county to great expense in acquiring additional machines. The board may use machines now on hand to the best advantage in meeting the standard of one machine for every 100 qualified electors, and use the less costly method by providing paper ballots in the remaining precincts or provide for

the use of both machines and paper ballots in any of the precincts, but still adhere to the prescribed standard of one machine or one curtained booth for every 100 qualified electors. In such matters the board may exercise its discretion so long as it adheres to the prescribed standard.

The second part of the demurrer is overruled.

*Writ allowed.*

HORNBECK, J., concurs.
MILLER, P. J., concurs in the judgment.